Mr. Clerk, will you please call the first case? 17-1009 Wrapsdale, Virginia v. Norfolk Southern Railway Company I'd like for the parties to step up to the podium with the opponent going first. I want you to state your name, tell the court who you represent, and approximately how long your argument will take. Karen DeGrand, Norfolk Southern Railway Company I would like to give five minutes of my time to Ms. Erickson from the Department of Justice. And so depending on the questions, I would say 15 minutes for my argument, and I would like to also have five minutes for rebuttal if I may. All right, that's fine, Ms. DeGrand. Is Ms. Erickson going to need any time for rebuttal? I don't believe that she will. Okay, we will leave you with all the time for rebuttal. Fair enough, Your Honors. Very good. Thank you. Okay, who represents the affilee? Good morning, Counsel. Good morning, Your Honors. My name is William McMahon. I represent Rafael Munoz in this case. Okay, very good. How much time will you take? Ten minutes would be sufficient. Ten minutes. Very good. I understand there's some amicus here. Are they present? That's us. That's you? Okay, very good. All right, Ms. DeGrand, why don't you proceed with your argument? Thank you, Your Honor. Again, Karen DeGrand for the defendant appellant, the Norfolk Southern Railway Company. Good morning. May it please the Court, Counsel. This appeal boils down to two questions. One, does the RRTA encompass pay for time lost in its definition of compensation? And two, does the RRTA incorporate in its definition of compensation a particular exclusion from gross income, Section 104A2, for the amount of damages received on account of physical injury? The statute and the IRS regs and rulings tell us the answer to those questions. As in all instances of statutory construction, the beginning point is the statute, the Railroad Retirement Tax Act, which provides that an employee's compensation defines the railroad's withholding obligation. And the RRTA, just to be clear, and I think this is an important point, is an internal revenue code, but is not part of Subtitle A, which is called income tax. Subtitle A contains the general information relevant to the tax returns that maybe some of us are still yet to file today. The RRTA is within Subtitle C, entitled employment taxes. Let me just say, why shouldn't we follow loose, or tell all the rest, too? Because the same arguments raised there are raised before us. Your Honor, there's several reasons why the court should not follow loose. Of course, there is competing authority from the Sixth Circuit in the Hans case and in the Supreme Court decisions of sister states that followed Hans and rejected the compensation analysis of loose. And, Your Honor, in our view, loose is wrong in this definition of compensation. Well, let's start with, all we have here is a purely legal question, correct? Correct. So under Chevron, we begin with an analysis of whether there's an ambiguity. And loose, there's no ambiguity, correct? That's what the court said. So why is there an ambiguity when the plain language of the statute says that for services, it talks about services, and there are no services here, so under the plain language, we don't have to go any further, do we? Your Honor, I don't agree with that. I don't think you would. That's correct. Compensation, the way it's defined in 3231E, means any form of money, remuneration, paid to an individual for services rendered as an employee. In our view, that does encompass. But you're looking at the CFR. Well, that's 3231E1. Right. That's the statute. That's the tax code, the RTA. And I think it's important to look at that language and also to look at the exemptions that follow that introductory language. And certain types of payments are excluded from the definition of compensation. Pay for time lost is not. But the plaintiff takes the position that the exclusions don't really define the universe and that because the statute on its face says remuneration for services rendered as an employee, that it's not reasonable to say that that encompasses damages for time lost. I think it is reasonable to say that, Your Honor. And I think that in looking, even looking at the plain language of the statute, the exemptions are part of the statute and the exceptions are part of the statute. And I think looking at the statute as a whole, I'm not getting to the regs yet, that tells the court that that broad language, any form of money remuneration paid to an individual for services rendered is subject to those exclusions, and there isn't the exclusions that immediately follow and then the exclusions that are contained in subparagraphs E4 through 12 don't say anything about pay for time lost. And I think that's an important point for the court to note. I also think it's important for the court to note that in the FICA context, that definition is interpreted not on that, it's not interpreting the RRTA, but interpreting FICA, that it goes broader than the actually language. And actually is a word that the Luce Court inserted to find, to reach its plain text analysis. So I think that is, that is also indicates erroneous analysis by the Eighth Circuit. The Eighth Circuit. Luce didn't go beyond step one of Chevron. Luce didn't go beyond step one of Chevron, although it did say, it did acknowledge that if it did go beyond step one, that the treasury regulation definitely encompassed pay for time lost, and that's a point also that the plaintiff seems to concede. But just, it doesn't go beyond step one, but it does look at part of the legislative history. So when we look at the legislative history, and lost wages were specifically included prior to 1975, and they were partially eliminated in 75, and eliminated entirely from the RRTA in 85, how can we overlook the significance of that and still get to where you want us to go? Well, Your Honor, I think that a careful view of that legislative history does go to where we would like to go. Because when, and if the court, and again, now that we're, once we're into the legislative analysis, then the issue is whether there is an ambiguity within the statute or whether it's silent under Chevron. And I think that we can agree that without that pay for time lost language that was eliminated from the statute in the 1975 and 1983 amendments, that the language draws the court to an interpretation of compensation that includes lost wages. It includes pay for lost time. And under the 1975 amendment, it was clear that what the court, or rather what the Congress was trying to do, was to correct a question that had raised between the railroads and the IRS as to the timing of the tax, as paid or as earned. And that explained that correction. Looking at the 1983 amendment, this was part of an overhaul of the RRA and of the RTA. And there's nothing in that legislative history, and Lewis didn't go this far and only looked at the wording but didn't look at the reason for those amendments. There's nothing in the legislative history that suggests that what the court, or rather what the Congress wanted to do was to reduce the amount of money that would be available to fund railroad retirement benefits. It was going the other way. So it didn't make any sense to conclude that by withdrawing that language, it meant to eliminate the concept of pay for time lost from the reach of the RTA. This sounds counterintuitive because usually in statutory interpretation, if language is there and then it's gone, Congress means what it says. In other words, if it's not there any longer, then they didn't want it there, and it would be rendered a different reading than what it had previously been. So is there a rule of statutory construction that you say applies rather than that particular statutory construction rule? There is, Your Honor, and it's cited in our briefs, that substantive changes of that nature are not made substantial by Congress. And that's also a rule of construction that is supported under Illinois statutory construction. And that was the basis for when the IRS looked at these issues after, you know, in the rear view mirror was the 1961 revenue ruling that talked about pay for time lost or addressed that issue somewhat. And then with the amendments in 1975 and in 1983, the IRS came back to this and said, ask the very questions that this Court is asking. All right, so now we have Chevron silence. What does that mean? Did the Congress intend to eliminate pay for time lost from our RTA taxes? And it came to the conclusion after receiving written commentary and holding public hearings that that was not the intention of Congress. Well, I don't see where the silence. I don't think the statute is silent. It says employee renders, services rendered. So that's not silence. Well, it's... I mean, why do we have to go beyond those words? The plain meaning of those words is pretty clear. It's been interpreted more broadly in the FICA situation, Your Honor, where it goes beyond actually rendered and has included back pay, for example. I think that was under the Gerbic case. And I think that as a matter of common sense in looking at those words, you know, to say that it would only pertain to services that are actually rendered or that under the loose analysis there would be no payroll tax required for sick pay or for holiday pay or for vacation pay. And that's a substantial change in the statute. And again, just to respond... Well, that wasn't an issue before. They didn't say anything about that. I mean, that's just... You're taking this decision and trying to render it into some question that wasn't asked. But just taking the question before the loose court and this question with regard to the injury, and reaching the conclusion that Chevron deference or the Chevron analysis should be applied because we have, you know, at a minimum, we have a statute that is silent on the issue of pay for time lost. And therefore, you know, the inquiry must go further. But, I mean, as pointed out, the RRA and the RRTA have different boards, different purposes. I mean, they're different. And in the impaired material, you're bringing them together when there's various significant differences between those statutory schemes. Well, the Seventh Circuit has called it two sides of one coin. And, you know, there are certain... You know, the function of the one is to distribute benefits. The function of the other is to collect tax to fund those benefits. I have to disagree with the court to say that those are entirely different. They're independent bodies, but they are serving the same function in a very important policy that's been, that is furthered by, and that was in line with Congress when they enacted both statutes originally at the same time in the 30s to care for and ensure the retirement benefits of retired railroad employees. So I disagree with the analysis of the loose court to say that these, you know, they're different statutes. They have different agencies. But aren't they moving toward the same goal? And isn't, you know, there can't be a complete discussion of this issue without taking into account that without the RRTA funding, then the RRA benefits that are coming from the RRB are not going to have, it's just not going to be adequate. Where's the money going to come from? And when you have on the one hand that the railroad employee will receive the retirement benefits that pertain to pay for time lost, and it's clear, and I don't think there hasn't been any dispute by the plaintiffs, and I don't think there's any dispute in the case law, that under the RRB that is a source of retirement benefit. There has to be a funding source for that benefit. But the same isn't true of Social Security benefits, that a non-railroad employee who recovers lost wages isn't obligated to pay Social Security tax on that because it doesn't enhance his Social Security benefits. That's right. It's a different situation, and you don't have that same disparity. Under the Social Security Act, so when you look at 104A not being applied for FICA, then there's a good reason to say, well, it's different, besides the fact that they're in completely different statutes in the code, but that it's different in the RRTA situation because there is going to be a benefit for that pay for time lost. It's going to go toward the compensation and toward the years of service when the employee's retirement benefits are calculated. That's not the same as Social Security. You don't get a Social Security payment for a lost wage award, and that's a significant difference that I think should be an important part of the analysis. There's an argument here that the jury should have been advised. If the railroad took the position that this award bore tax liability for the plaintiff, that the jury should have been told about that. I mean, one of the reasons for the IPI instruction on taxes is so that a jury doesn't gross up an award believing that the plaintiff has to pay income tax on it. If Mr. Munoz has to pay tax, some tax, on this award, shouldn't the jury have been told about that? No, Your Honor, because that instruction pertains to income tax. It doesn't pertain to RRTA tax. And I think if the court looks back at the genesis of that instruction, which is the Leopold case out of the United States Supreme Court, I think it gives guidance that should lead the court to reverse, not to affirm, because Justice Stevens articulated for the Supreme Court in Leopold that the measure of the employee's award should be the net, and this is under the FELA, so this has got its own federal focus and federal law that defines it. And under Leopold, the employee can only recover what the after net of everything injury would have been. And that's what we're talking about in this case, because the railroad has this obligation. The railroad has to pay its own share of the tax. The railroad has to remit the employee's share of the tax during the year that the amount is paid. And that's clear and that's not disputed from the standpoint of the railroad's obligation. So once that is paid, then the employee is getting a windfall if it's not deducted or set off from the judgment. Mr. Grant, since you've given some of your time to Ms. Erickson, why don't you summarize and then we'll hear from Ms. Erickson. Very good, Your Honor. It seems clear to me, and I would ask the court to apply the Chevron steps in looking at this issue, because it seems that in reviewing the statute, in a minimum, it's silent or ambiguous on the pay for time lost. And once the court goes to the IRS regulation and sees what the IRS says and sees what Congress's reaction to the IRS regulation is, in the years since 1994 and the five amendments of the statute and its definition of compensation, it's never repudiated that regulation. And it's never gone back and added in to the exclusions from our TATX section 104A2 of the code. And I think that's a very significant signal, a very strong signal, that Congress has acquiesced to the agency's interpretation of the statute and should guide the court. Thank you. Thank you. Good morning. Good morning. May it please the Court, Mary Ann Erickson here on behalf of the United States, I'd first like to thank you for allowing me to participate in the oral argument. I believe Mr. Grant has done an excellent job of setting forth our position. The primary reason that I'm here today on behalf of the United States is that we feel very strongly that some of these recent rulings, such as making it a loose case, have put railroads in an untenable position where they're required, as the railroad has done in this case, to pay taxes on behalf of the plaintiff to the IRS and then to pay that amount again to the plaintiff under the order of the court. And there's no doubt that the IRS takes the position that these damage awards are subject to the RRTATX. Absolutely, Your Honor. That is the IRS's position. I've consulted with them extensively on these cases. And I just want to emphasize that as far as interpreting the statute, Mr. Grant is correct that the IRS took the position after those amendments in 75 and 83. It wasn't as simple. It's complicated, but if you look at the legislative history as a whole, it wasn't as simple, Your Honor, as simply removing the language that said it includes pay for time lost. They did a big overhaul of the statutory scheme. It was primarily geared at changing the timing of those payments. So it wasn't a question of whether or not lost wage payments were taxable. It was a question of when would they be taxed. Would they be taxed as if you had received them during the time that you would have been working, or would you be taxed at the time you actually received them? And the answer was the latter. And when Congress changed that, they had to change the regulations that accompanied it. And the furthermore, the 1983 statute was called the Railroad Solvency Act. It was enacted in order to boost the solvency of the railroads because there was some concern that they were not adequately funding the benefits and the time it benefits under the RRA. It would be almost inconceivable that in enacting the Railroad Solvency Act, Congress would have intended to make a change that would have contributed to the insolvency of the retirement program of the railroads. If you remove these taxation of these payments, you're essentially creating an unfunded benefit when these employees eventually do retire. Counsel, has the IRS communicated its position to the Congress and asked them to reinsert this language into the statute? That's an excellent question, Your Honor. And, yes, in fact, the IRS, but more particularly the Tax Division of the Justice Department, does reach out to Congress and request clarifying language on numerous issues. We have limited success in getting their attention. Okay. But there ought to be a difference here depending on how we might interpret it. For example, if we are like Justice Scalia and look at simply the text in a situation like this under Chevron, then we don't – I don't think there's an ambiguity. I think in order to find an ambiguity, you would have to show intent and, therefore, you would move ahead and you might – I mean, your argument is, yeah, we have an ambiguity here. The text does not say. If I only look at the text, am I going to get to step two under Chevron? The text does not say that payments for time lost are excluded or included in the definition of compensation. And the definition. Well, this is rendered. The service is rendered. That's correct. But I think under the Naropko and the Quality Store's Supreme Court decisions, which are granted looking at in more the FICA context, they say that you don't say wages or compensation. In fact, I think that uses the word compensation. It does not strictly mean payment for service. It's actually rendered you have to encompass the entire employer-employee relationship. And I believe you need to look at the ROTA in that same light in order to get an accurate interpretation of the actual language. And that's why after Congress enacted those two changes in 75 and 83, the IRS felt compelled to go and look at the statute, notice that we believe inadvertently Congress had simply taken out this little phrase that said, oh, by the way, it does include payment for time lost. And they looked at the statutory scheme as it existed. They examined all the legislative history, and they came to the conclusion that they needed to issue a clarifying regulation that said, by the way, just because it no longer explicitly says it includes this, it's effectively silent on that point. And we're going to clarify by saying we don't believe they intended to change the fact that it does include pay for time lost. Well, since these changes were made so long ago, in most of the cases that we're talking about have been more recent. Is there a reason that you know of for that, that for all those years, even though these cases were in state and federal courts, this issue apparently didn't percolate to the appellate courts? I don't know exactly how that happened, Your Honor. I believe that some combination of the railroads becoming aware of there was some confusion. Different railroads were taking different positions about whether or not they needed to withhold taxes from these payments. And four or five years ago, me and the railroads contacted the Justice Department and asked us to weigh in on this to get some clarity. And so we've been involved in a series of cases for the last few years and attempting to get some sort of clarity. At the moment, the waters are muddied. We're hopeful that the Supreme Court will grant this petition in the loose case, which I believe goes to court conference next week. Thank you. Thank you very much. Mr. McMahon, I understand you only requested 10 minutes. Yes, sir. And your opponents have had a few more minutes. This Court is going to make sure that Mr. Munoz gets all the processes due. So please proceed. Thank you. Wait a second. Nicole, can you pull the shade? I notice that the sun is shining. Can you pull it from right here, I think? Oh, yeah? Okay. Please push the button. May it please the Court, thank you, Your Honors, for granting the courtesy of a little extra time. And counsel, thank you, Karen, for the courtesy in this matter. So, yes, Your Honors, as you could guess by the brief, we stand behind loose too. We think it's rightfully decided. But I'd also like to address something that in the brief seemed to be on the penumbra of some of the arguments. But today, this morning, I heard it front and center, which sort of surprised me. And the issue is this. The railroads don't pay taxes on FELA verdicts. They don't. If they do, if they paid the RRTA tax, I've been doing this for 14 years. My firm's been around for 40 years. They don't pay. If they do, my clients get railroad-credited service. That's an extremely valuable thing. That would impact the retirement benefits or the retirement pool that we just heard was discussed by the Department of Justice and by Railroad Counsel. In the record with regard to this issue? In the record. I mean, I assume not. But is this brought up below? So it wasn't. And that's part of the procedure problem in this case, right? So I got this months after the verdict, this issue that, oh, now there's taxes to be paid. Well, but it was in the railroad's trial brief. Yes, it was granted. It was in there. Well, I granted it. We tendered the IPI under LIPEL that says, which we do, and if we don't do it, the railroad does it. Our economist backs out all the taxes, including the RRTA taxes, as the railroad always requests. I'm on trial right now. I'm in front of Judge Varga across the street. Union Pacific, I'm looking at Motion to Eliminate 24 that says, I have to, I cannot submit gross wages. I have to submit net wages. And the net wages include backing out the RRTA taxes. That's what takes place in every FELA case. From the plaintiff's own position, and I think if you read the Arla brief, my end of the case, you'll see this. We don't care. All we want is the rules of the game laid out. If they want to argue that we have to pay RRTA taxes out of the verdict, great. But don't do it a month after I present my evidence. I think you took the position in the trial court that the court, that it was appropriately addressed through a post-trial motion for a setup. Didn't you? Absolutely. Right. Okay. I just think it's now hearing all this discussion of how it might be hurting somehow, the railroad retirement trust fund. There's no information about that at all. We can do discovery on that in the case if they really want that to be their position. How many FELA plaintiffs who has a verdict have you actually paid? For example, Parsons, a record $22.1 million verdict that went through this very court against the same railroad with millions of dollars in lost wages. No RRTA post-trial motion. We're way beyond the record in this case, Mr. Greenhouse. Well, I just heard this this morning. It was on the penumbra of a brief, but it wasn't front and center. But here I hear it will enhance his retirement. If Mr. Greenhouse doesn't pay these taxes, it will enhance his retirement. What they're saying is if the employer, as the IRS has taken the position it's obligated to do, pays both its and Mr. Munoz's share of RRTA taxes, as it would if it was paying him every week, that when Mr. Munoz goes to retire, he will get the benefit of that payment without himself having to pay his own share because it wasn't deducted from the judgment that he recovered. And I'm telling you, no months of credible service are ever paid in these cases. That is actually a hot topic during the settlement conferences of these cases. For example, an employee, you need 260 credible months of service to gain basically your 20 years equivalent to satisfy for a pension. There's a lot of workers that say they have 200 or 230, not quite that amount. So during those, we try to get by the months. The railroad is always obstinate about it. No, we're not going to do that. So it's an issue. If it wasn't, if we could just go to verdict, get our months of service, then that would be the encouragement for... You know, I just heard Ms. Erickson answer my question that the IRS, their position is that the employer has to pay both parts of the tax, their own and the employee's, no questions. And so if that's the position that the IRS takes, why are we talking about what's not in the record? You're saying, but they really don't pay it. That's not in the record. Well, I also heard her say, that's also not in the record, that railroads are not doing this. And that's our experience. And that's the only reason I raise this, Your Honor. I'm not trying to be, you know, trying to argue a point that's not in the record. I just heard all this... I would have thought in some of these six or eight cases that have addressed this issue, this would have come up, that the railroad isn't really out of pocket. And they're done post-trial in this way that's, you know, where discovery is not done. And it's been brought up that way. That's how the record has been developed. But, you know, I think the unfunded benefit and all this, it's just not... There's no evidence. They don't have any evidence of it. And we would love to investigate that if we could. But I think I've used up my time, but... Okay. Good. So going back to the argument, you know, I think loose two, obviously, is the right analysis. It is. What about the issue made by their side at silence? This is silent. What's your response to that? It was. It's not silent as to what it means, the pay for the loss of time. Well, I agree that in order for it to be paid for loss of time as the service, this is exactly what the FILA verdict is compensating the opposite of, right? You're not going to be at work. And this is the humanitarian nature of FILA. That's the historical nature of why this statute, the special statute, is in place, is to try to compensate the employee who's not going to be able to work due to a severe injury like Mr. Munoz suffered. And especially in Mr. Munoz's situation, he was back to work. But he had a lot of injuries that were going to keep him from continuing to work on a regular basis. He's going to have to go off for, say, physical therapy in this month here or there, and he's a young man. So over the next 20 years, this is what that $300,000, which is part of it was past loss time for that year and a half that he missed, but part of it was the future time that he's going to have to be off here and there. And if he can't go back to work for the railroad, then that's what the future loss time is also avoiding him for. So under the statute for services rendered, you know, I think this is the – what we're arguing is that this is the opposite. So what about defendants' point that under the first Chevron step, when you look at the statute, it includes not only a definition of compensation, but it also has specific exemptions from compensation, and lost wages isn't among them. So if we're looking at the statute as it exists at the first Chevron step, isn't it silent about that? But then if you look at compensation, and if compensation is for services rendered, I think that's where we have to fall. Anything further, Mr. McQueen? Nothing here. Just thank you very much. Thank you very much. Ms. de Groot. Thank you, Your Honor. Counsel just said, and I think made a point when he described FVLA damages as replacing income. And that really is the point of our interpretation of the statute. But I'd like to back up from this for a minute and address these comments about – that seem to indicate that counsel is saying he's surprised by this argument or it's a new argument that's being presented today. I don't think that's correct on the briefs. I don't think it's correct when you describe the trials. Justice Mason commented this was raised in a trial brief that the plaintiff – was served on plaintiff before the testimony began and also was the subject of plaintiff's motion to strike an affirmative defense when plaintiff said that this is a matter for post-trial. As far as these statements that are far outside the record and inaccurate about the railroads don't ever pay these taxes, I'd like to refer the court to page 825 of the record, where the railroad provided a statement, a calculation that includes – well, page 825 is a RRB, Office of Programs, schedule that says what the benefits are and what the payment of tax is. And then that is supported by the affidavit of Mr. Hardin of the Norfolk Southern. And there's actually a signed copy of that affidavit at page 802 of the record. But it also accompanies this program statement. And it sets forth that Norfolk Southern has calculated this amount, calculated its requirement, and has obtained from the RRB its approval that yes, that is the amount that's owed. And if there's any question, this is not – as I understand it, I'm not trying these cases, Mr. Grebel is, but as I understand it, this is something that does come up frequently and the railroad does pay its tax. Because the IRS and the RRB are telling the railroad that it has to. So – but if – let's say that the railroad hadn't paid the tax, that would be a basis for the IRS to come after the railroad. That's the railroad's obligation. And the railroad did pay its tax in this case. So this references to other cases and everything, I just – I don't think that that is – it's not accurate and I don't think it's what should be before the court. This $310,000, the tax was paid on it in 2017, and the tax is calculated on the – at the time of the payment. And that's what those – the changes in the statute were all about, and I talked about it in some of the briefs and also Ms. Erickson elaborated. So I think that that's a point that needed to be clarified. Let me just make sure I understand one of the issues that counsel is bringing up, and that is if you are correct and the rule in your favor, then do you agree that the employee would then be credited for work for time with regard to his or her retirement? So that – so I thought that what he was saying is that right now the employee for that amount of money, a contribution for whatever time period, would not be added to that 240 months or whatever it was, and that if they pay the tax the way you're saying and you win, then they get all the credit for as if they had rendered that service and – is that right? They would add their months of – Yes, it corresponds to creditable service. Okay, so it corresponds to creditable service. To me that may be a question of fact, I'm not sure, because that would mean that what you're saying is if it's always been this way and the taxes should be paid, then he wouldn't have raised that issue because they'd always be getting credit with regard to these types of recoveries. Well, I mean – There seems to be a disconnect somewhere here. Well, it's – I guess, Your Honor, I go back to the obligation of the railroad to pay the tax under the Railroad Tax Act. But that's partial of giving credit for the time to the retiree later on. And it corresponds to the IRB's calculation, and the railroad reports its payments to the IRB, and then the IRB ultimately makes that calculation. So if the tax isn't collected and isn't paid to the IRS, then the IRB does not have the funds to pay for these retirements, and it's as simple as that. And it is – and it is credited. The employee does receive credit for these payments. I can't give you specific numbers at the moment, but that would be something that would become – Credit for months. For the time and compensation, as I understand it, Your Honor. But there's nowhere in the record what that might be, because couldn't it be interpreted in different ways as to how much this amount, the $320,000, how many months of service that would be credited? Well, the amount is set forth in the Sanford-David of Mr. Hardin. And the way that it's credited is set out in the IRB, in the IRA, and the regulations promulgated under the IRA, and those are cited in our brief. And those are cited also in the Railroad's brief, or the Railroad Association's brief. Why don't you bring your argument to a conclusion? Thank you, Your Honors. I appreciate the extra time today and the coarse hospitality as far as Ms. Erickson is concerned. I would just reiterate that the – I would remind the court, and I know this is something that was mentioned earlier, the Supreme Court is looking at this case, this loose case. It requested that the plaintiff file a response, and that happened in March, and then also the Railroad filed a reply just a week or two ago. And that's set for conference on the 27th of April, so there may be some action from the Supreme Court on this issue. I think that and the Hans case and the other cases from the state Supreme Courts tell the court that this is not an unambiguous statute. There are quite a number of reasonable views of what that statute means. And even within the cases that counsel or that plaintiff has cited, the Cowden case, for example, which gives sort of rise to the law and all those district court decisions, disagrees with the decision and reason of a loose case. So there is quite a bit to be contended with. But at the end of the day, I think that the IRS has looked at this carefully. There's regulations that have been on the books since – not regulations, but a revenue ruling that has been on the books since 1961 that's still in place pertaining to Rule 104. And the determination of the IRS has been – and its regulations has been on the books for a long period of time without Congress doing anything to repudiate. And I think that that should lead the court hopefully under a Chevron analysis to reverse. Thank you, Your Honor. Thank you. Mr. Grand, Ms. Erickson, Mr. McMahon, the court would like to thank you for your arguments. We thank the parties for their briefs. We have given you a little additional time because we consider this case a matter of first impression. We appreciate you letting us know that the Supreme Court may be visiting this issue. The court is going to take this case under advisement and the court is going to stand in recess for about five minutes.